IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| In RE: Lāhainā Wildfire Litigation | 1:24-cv-00259-JAO-BMK<br>(Class Action)<br>**DECLARATION OF VINCENT G. RABOTEAU** |

## DECLARATION OF VINCENT G. RABOTEAU

1. I am an attorney duly licensed to practice law in the Federal District Courts of the State of Hawai'i.

2. I am an attorney of record in *AmGuard Insurance Company, et al. v. Maui Electric Company, Limited, et al.*, Civil No. 1CCV-24-0000068, for Subrogation Plaintiffs AMGUARD INSURANCE COMPANY; CONCERT SPECIALTY INSURANCE COMPANY; GENERAL CASUALTY COMPANY OF WISCONSIN; THE CINCINNATI INSURANCE COMPANY; UNIVERSAL PROPERTY & CASUALTY INSURANCE COMPANY; CERTAIN INTERESTED UNDERWRITERS AT LLOYD'S SUBSCRIBING TO POLICY PG2203220; CERTAIN INTERESTED UNDERWRITERS AT LLOYD'S SUBSCRIBING TO POLICY PG2203891; STATE FARM FIRE AND CASUALTY COMPANY; STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; HARLEYSVILLE INSURANCE COMPANY OF NEW YORK; ASPEN SPECIALTY INSURANCE COMPANY; ALLSTATE

FIRE AND CASUALTY INSURANCE COMPANY; ALLSTATE INDEMNITY COMPANY; ALLSTATE INSURANCE COMPANY; ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY; ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY; INTEGON NATIONAL INSURANCE COMPANY; CERTAIN UNDERWRITERS AT LLOYD'S AND VARIOUS NON-LLOYD'S INSURERS SUBSCRIBING TO POLICIES PIV209015, PIV205089, PIV202904, PIV201596, PIV201325, PIV200359, PIV199831, PIV199736, PIV198096, PIV195519, and Liaison Counsel for Subrogation Plaintiffs in the following actions pending before the Circuit Court of the First Circuit in the State of Hawai'i: *Amguard Insurance Company, et al. v. Maui Electric Company, Limited, et al.,* Civil No. 1CCV-24-0000068; *Certain Underwriters et al. v. Maui Electric et al.*, Civil No. 1CCV-24-0000179; and *Hyundai Marine & Fire Insurance Company, Ltd. v. Maui Electric, Limited, et al.*, Civil No. 1CCV-24-0000437.

3. This declaration is made upon personal knowledge, and if called upon, declarant is competent to testify as to the facts set forth herein.

4. Upon information and belief, the insurance industry has collectively paid over $2.3 billion to those individuals who suffered damages to their homes, businesses, and personal property due to the Lāhainā Wildfire. Subrogation

Plaintiffs have compensated individuals for the costs of finding alternate housing and transportation, loss of business and rental income, and other expenses.

5. Upon information and belief, Subrogation Plaintiffs are still in the process of paying claims and expect to contribute approximately $1 billion in additional payments to aid recovery efforts.

6. Subrogation Plaintiffs asserted their subrogation rights in state court by filing their respective complaints in the First Circuit: Civil No. 1CCV-24-0000068 (January 12, 2024); Civil No. 1CCV-24-0000179 (February 5, 2024); and Civil No. 1CCV-24-0000437 (April 5, 2024). Each complaint names the following Defendants: Maui Electric Company, Limited; Hawaiian Electric Company, Inc.; Hawaii Electric Light Company, Inc.; Hawaiian Electric Industries, Inc.; Hawaiian Telcom Communications, Inc.; Hawaiian Telcom, Inc.; Spectrum Oceanic, LLC; Time Warner Cable Information Services, LLC; Charter Communications, Inc.; Charter Communications Holding Company, LLC; Charter Communications Holdings, LLC; Charter Communications, LLC; Charter Communications Operating, LLC; Cincinnati Bell, Inc.; Trustees of the Estate of Bernice Pauahi Bishop; DOE Power Utilities, 1-10; DOE Telecoms, 1-10; and DOE Landowners, 1-10; DOES 1-200.

7. On August 2, 2024, the tortfeasor Defendants and the proposed interim class leadership announced a "global settlement" that *excluded*

Subrogation Plaintiffs from any recovery. The tortfeasor Defendants, the proposed interim class leadership, and the Liaison Counsel for Individual Action Plaintiffs in the state court proceedings entered into a Settlement Term Sheet without the participation or inclusion of the Subrogation Plaintiffs. That same day, the settling plaintiffs filed a motion in the Special Proceeding seeking a ruling that Subrogation Plaintiffs' exclusive remedy for recovery was to seek reimbursement from their own insureds pursuant to HRS §663-10.

8. According to Subrogation Plaintiffs' most recent review of public court dockets to date and upon information and belief, the Subrogation Plaintiffs currently have 6,570 insurance claims for which their insured-subrogors are not a party to any lawsuit. This figure represents that at least 88% of all property damage claims brought by the Subrogation Plaintiffs have no connection to any individual plaintiff who has filed a lawsuit in the parallel state court proceedings.

9. Individual Plaintiffs' attorneys have represented in the state court proceedings that in the context of a "global settlement," the function of this class action proceeding allows for the settling parties to release subrogated claims not associated with a specific individual plaintiff because every policyholder is considered to be represented by all plaintiffs or class members.

10. On August 12, 2023, the proposed interim class leadership filed the first class action lawsuit in the First Circuit Court of the State of Hawaiʻi as Civil

4

No. 1CCV-23-0001045 and was subsequently removed to Federal Court. (*See Eder, et al., v. Maui Electric Company, Limited, et al.*, USDC D. Haw. Case No. 1:23-cv-00459-JAO-BMK).

11.  Subrogation Plaintiffs' Complaint filed in the First Circuit Court of the State of Hawaiʻi as Civil No. 1CCV-24-0000068, made allegations that differed in form and substance from the proposed class action complaint, but did not assert any new state law causes of action.

12.  On October 27, 2023, the Honorable Peter T. Cahill assumed jurisdiction over a special coordinated proceeding brought by a group of individual action plaintiffs in the Second Circuit by granting an *ex parte* petition for the coordination of the Individual Plaintiffs' Maui Fire cases as Dkt. 12 in Special Proceeding No. 2CSP-23-000057.

13.  Upon information and belief, Subrogation Plaintiffs have never filed a lien in any state court proceeding. It is my understanding that Subrogation Plaintiffs do not intend to file any type of lien in any circuit in the future.

14.  Between June and July of 2024, I have attended and participated in several mediation sessions along with several other of my colleagues who all comprise the larger group of attorneys representing the Subrogation Plaintiffs in their First Circuit action in Civil No. 1CCV-24-0000068.

15. During one mediation session, the Mediators presented all Plaintiffs with one global settlement figure. Despite the objections of Subrogation Plaintiffs' counsel, the Mediators mandated all Plaintiffs to determine allocation of the global settlement figure amongst themselves. The settlement amount was not determined through a bargaining process, and we were informed that all Plaintiffs were not told the amount each Defendant contributed to the total settlement pool.

16. Throughout the ongoing mediation sessions, Subrogation Plaintiffs were informed that the total settlement amount was presented on a take-it-or-leave-it basis and no additional information was provided as to how the figure was determined or potential settlement terms necessary to reach an agreement, despite Subrogation Plaintiffs' continued requests for such information.

17. During negotiations, Subrogation Plaintiffs repeatedly requested some form of documentation that could be used to calculate the actual amount of uninsured property and personal injury damages claimed by the other Plaintiff groups. Despite these repeated requests, no documentation supporting Individual Plaintiffs' damage claims was ever produced.

18. Due to a lack of transparency surrounding the settlement terms and the Individual Plaintiffs' damage claims throughout the mediation sessions held from June through July of 2024, negotiations between the Plaintiffs were at an impasse and the global mediation ultimately failed.

19. In response to a July 23, 2024, letter drafted by Cynthia Wong, Esq., Liaison Counsel for Individual Plaintiffs, requesting an "urgent" status conference with Judge Cahill regarding the mechanisms to resolve insurer subrogation liens, Judge Cahill set a status conference for all Maui Fire Cases for July 26, 2024. Subrogation Plaintiffs purposefully chose not to attend or participate because they had no claims pending in the Second Circuit and were not parties before Judge Cahill in the Special Proceeding No. 2CSP-23-0000057.

20. On July 26, 2024, approximately 30 minutes after the above-mentioned status conference, Judge Cahill issued a Sua Sponte Order of the Court Re: Hearing on the Effect of HRS Section 663-10 on All Maui Fire Cases as Dkt. 1655 in Special Proceeding No. 2CSP-23-0000057 (attached hereto as "Exhibit 3), finding that it had "jurisdiction, authority, and legal duty to review and resolve subrogation liens" associated with the Lāhainā Fire. The *sua sponte* order set an associated briefing schedule for a hearing on August 13, 2024 and acknowledged that the Subrogation Plaintiffs are not "named as parties" in Special Proceeding No. 2CSP-23-0000057 and do not receive notifications of the court proceedings.

21. Attached hereto as Exhibit 1 is a true and correct copy of the proposed pleading setting out Subrogation Plaintiffs' claims pursuant to FRCP 24(b)(1)(B).

22. Attached hereto as Exhibit 2 is a true and correct copy of Individual Action Plaintiffs' Motion for Orders Regarding Operation of HRS § 663-10 and

Application for Interlocutory Appeal Under HRS § 651-1(b), filed August 2, 2024, as Dkt. 1740 in Special Proceeding No. 2CSP-23-0000057.

23. Attached hereto as Exhibit 3 is a true and correct copy of Judge Cahill's Sua Sponte Order of the Court Re: Hearing on the Effect of HRS Section 663-10 on All Maui Fire Cases, filed July 26, 2024, as Dkt. 1655 in Special Proceeding No. CSP-23-0000057.

24. Attached hereto as Exhibit 4 is a true and correct copy of the settlement Term Sheet that was attached by Individual Action Plaintiffs to their Motion for Orders Regarding Operation of HRS § 663-10 and Application for Interlocutory Appeal, filed August 2, 2024, as Dkt. 1740 in Special Proceeding No. 2CSP-23-0000057.

25. Attached hereto as Exhibit 5 is a true and correct copy of an excerpt from the August 30, 2024 Hearing Transcript, before Judge Cahill, at 37-38.

26. Attached hereto as Exhibit 6 is a true and correct copy of Judge Cahill's Order (1) Granting Individual Action Plaintiffs' Motion for Orders Regarding Operation of HRS § 663-10 and (2) Denying Without Prejudice Application for Interlocutory Appeal Under HRS § 651(b), filed on August 19, 2024 as Dkt. 1954 in Special Proceeding No. 2CSP-23-0000057.

27. Attached hereto as Exhibit 7 is a true and correct copy of Individual Action Plaintiffs' Motion for (1) Reserved Questions to the Hawaii Supreme Court

8

Under HRAP Rule 15(a) or (2) Leave to Take an Interlocutory Appeal Under HRS § 641-1(b) of the Court's August 19, 2024 Order, filed on August 21, 2024 as Dkt. 1958 in Special Proceeding No. 2CSP-23-0000057.

DATED: Honolulu, Hawaiʻi, September 26, 2024.

                                          /s/ Vincent G. Raboteau
                                          VINCENT G. RABOTEAU